[Cite as *Fenstermaker v. Fenstermaker*, 2015-Ohio-5524.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO


KENNETH C. FENSTERMAKER,           :      **O P I N I O N**

      Plaintiff-Appellant/           :
      Cross-Appellee,                **CASE NO. 2014-T-0012**

      - vs -                         :

CAROL A. FENSTERMAKER,             :

      Defendant-Appellee/            :
      Cross-Appellant.               :


Civil Appeal from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2007 DR 242.

Judgment: Affirmed in part, reversed in part, and remanded.


*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483-5805 (For Plaintiff-Appellant/Cross-Appellee).

*William R. Biviano*, Biviano Law Firm, 700 Huntington Bank Tower, 108 Main Avenue, S.W., Warren, OH 44481-1089 (For Defendant-Appellee/Cross-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Plaintiff-appellant/cross-appellee, Kenneth C. Fenstermaker, appeals the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, granting defendant-appellee/cross-appellant, Carol A. Fenstermaker's, motion for child support. Based on the following, we affirm in part, reverse in part, and remand this matter for proceedings consistent with this opinion.

{¶2} Kenneth and Carol were married on November 2, 1991, and had two children: Rachel, born on July 10, 1991, and Valerie, born on May 7, 1993.

{¶3} In 2007, Kenneth filed a complaint for divorce. In the judgment entry/decree of divorce, Carol was granted legal custody of the two children, and Kenneth was ordered to pay child support.

{¶4} Upon their daughter Valerie turning 18, the magistrate recommended approving the determination of the Trumbull County Child Support Enforcement Agency (CSEA) that child support be terminated due to her age. Valerie was deemed emancipated as of May 31, 2011. This was made an order of the court in an October 20, 2011 journal entry.

{¶5} Subsequently, Carol filed a motion for child support arguing that child support was erroneously terminated for Valerie "based upon [her] age * * * without considering [her] developmental condition." Kenneth filed a motion to dismiss, arguing the court did not have jurisdiction to reinstate child support.

{¶6} A trial was held. The magistrate issued a decision denying Kenneth's motion to dismiss for lack of jurisdiction and granting the motion for child support. The magistrate determined Kenneth should pay $776 per month in support. The trial court adopted the magistrate's decision finding Valerie suffered from a "disability" and that, due to her disability, Valerie "remains a minor," and her "disability renders her incapable of fully supporting and maintaining herself without constant care." It also held that the court retained jurisdiction to modify child support.

{¶7} Kenneth filed objections arguing, inter alia, that Valerie had not been diagnosed with a "disability" and is capable of supporting herself. Carol also filed

2

objections arguing the effective date of the child support order should have been when the initial support originally terminated.

{¶8} Both parties filed a "statement of evidence" due to the inability to create a transcript. Kenneth also filed the deposition of Dr. Joseph Farris, a child and adolescent psychiatrist, which had been presented at trial. Dr. Farris had treated Valerie since 2007. Dr. Farris testified that Valerie cannot drive, live on her own, take her own medications appropriately, manage responsibilities such as cooking or cleaning, or hold a full-time job. His testimony and progress notes indicate that she suffers from Obsessive Compulsive Disorder, Attention Deficit Hyperactivity Disorder, Asperger's Syndrome [a condition in the Autism Spectrum], depression, and panic disorder. He opined that Valerie "has a tremendous amount of difficulties to take care of herself in regard to activities of daily living" and is unable to "support herself independently" and "requires supervision." He believed that, over time, she may be able to accomplish these aforementioned tasks, as many of her problems are treatable.

{¶9} On cross-examination, Dr. Farris further testified that Valerie's IQ is within the average range and that many of the problems and symptoms that Valerie experienced were self reported, as he did not directly observe them.

{¶10} In her "statement of evidence," Carol also attached Dr. Farris' progress notes regarding Valerie's treatment and a 2006 Psychoeducational Evaluation, finding Valerie met "special education criteria as Autistically Impaired."

{¶11} A Statement of Magistrate was filed finding that Carol's "duties of home taking care of Valerie * * * prevents her from working full time," and Carol testified that Valerie is unable to support herself. The magistrate found that Valerie was "clinically

3

diagnosed with depression, ADHD, Asperger's, OCD, and Panic Disorder." The statement also found that Valerie worked on a part-time basis in a day care, with Carol testifying that Valeire worked "approximately two * * * hours per day," because that is "all she can handle." Further, Valerie's employer testified she worked four or less hours per day. The magistrate found "Dr. Farris is of the opinion that Valerie still has a tremendous amount of difficulties to take care of herself in regard to activities of daily living." The magistrate again concluded that Valerie should continue to receive child support.

{¶12} Kenneth filed supplemental objections. The parties submitted written final arguments, pursuant to the court's request.

{¶13} The trial court issued a judgment order denying Kenneth's objections to the magistrate's decision. In a later judgment, the trial court overruled Carol's objections, finding that the original order terminating the child support for Valerie was not improper because, at the time, Carol failed to raise the issue of a continuing requirement of support. It further held the effective date of the support order was appropriate.

{¶14} Kenneth asserts the following assignments of error:

> [1.] The trial court abused its discretion in granting mother's motion for child support and overruling father's objections.
>
> [2.] The trial court erred in not crediting the child's income against the child support order and in setting child support after the administrative order was terminated.

{¶15} At the outset, we note a transcript of the hearing on the child support modification was not filed, as it does not exist: there was a malfunction with the trial

court's recording system. Therefore, in order to deal with objections to the magistrate's decision, the trial court instructed the parties to prepare respective "statements of evidence," which would allow the trial court to rule on the objections based on what the parties recalled was adduced at trial. The trial court then proceeded to rule on the objections based on the best information it had available to it at the time. On appeal, Kenneth determined an App.R. 9(C) statement of the evidence was not necessary because the record on review contained all the information the trial court had before it when rendering its decision. Therefore, this court is able to resolve this appeal based on the same record the trial court had before it.

{¶16} Kenneth maintains that a child with Asperger's, depression, and "mood disorders," who graduated from high school, has an average IQ and has been able to work part-time, should not be considered a "*Castle* child."

{¶17} The Ohio Supreme Court in *Castle v. Castle*, 15 Ohio St.3d 279 (1984), ruled that a domestic relations court has jurisdiction to order support for an adult child under certain circumstances. The syllabus in *Castle* reads:

> 1. The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority.
>
> 2. The domestic relations court retains jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or to modify support payments for a mentally or physically disabled child, who was so disabled before he or she attained the statutory age of majority, as if the child were still an infant.

5

{¶18} The *Castle* Court, in holding there was jurisdiction to enter a child support order for disabled children, relied on both secondary sources and case law from outside of Ohio.

> The law regards a normal child as capable of providing his or her own support at the age of eighteen. See R.C. 3109.01. An exception to this general rule has been recognized by a majority of states which have reviewed the question as follows:
>
> '* * * [But] where a child is of weak body or mind, unable to care for itself after coming of age, and remains unmarried and in the parent's home, it has been held that the parental rights and duties remain practically unchanged, and that the parent's duty to support the child continues as before. The obligation to support such a child ceases only when the necessity for the support ceases.'

*Id.* at 282, quoting 39 American Jurisprudence, Parent and Child, Section 69, at 710 (1942).

{¶19} While the opinion sets forth dicta concerning the consideration to be given to whether an adult child should be determined under a "legal disability," no definition of "legal disability" was established. Since the *Castle* holding, the Ohio Legislature codified the *Castle* dicta by enacting R.C. 3119.86(A), which states, in pertinent part:

> (1) The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
>
> (a) The child is mentally or physically disabled *and* is incapable of supporting or maintaining himself or herself. (Emphasis added.)

{¶20} There was no dispute the adult child in *Castle* was severely disabled; she was "severely retarded, physically dependent and incapable of any gainful employment." *Id.* at 279. While we agree Valerie's disabilities are not as significant as those suffered by the adult child in *Castle*, our inquiry, nevertheless, remains the same:

6

whether Valerie is mentally or physically disabled *and* whether she is incapable of supporting or maintaining herself.

{¶21} With respect to the first prong, i.e., "whether the child is mentally or physically disabled," the magistrate found Valerie was suffering from Asperger's, depression, Attention Deficit Hyperactivity Disorder, Obsessive Compulsive Disorder, and panic disorder. On appeal, Kenneth cites to several cases where the adult child suffered from a severe disability—a congenital genetic disorder or developmental disabilities and a very low IQ. These cases, however, do not impact whether Valerie suffers from a disability. Although Kenneth appears to argue a mental disability requires a child to be of low intelligence, his interpretation is unsupported by citation to any case law and would essentially exclude any individual with a mental disorder or mental illness from falling under *Castle*, regardless of the severity of her problems and inability to care for herself. *See, e.g.*, *In re J.F.*, 2d Dist. Montgomery No. 24370, 2011-Ohio-2969, ¶48-50 (reversing a decision not to award child support to an individual with bipolar disorder, ADHD, and past suicidal thoughts who could not support himself).

{¶22} Kenneth attempts to minimize Valerie's disability and argues that a disability was not found in other cases where the evidence failed to demonstrate a child was unable to support himself. This argument, however, fails to take into account Dr. Farris' deposition. In the absence of factual findings to the contrary, we accept the magistrate's factual determination as to this issue. As previously noted, although Valerie's disability "is not as profound as the disabilities suffered by the *Castle* child," *see Blaner v. Blaner*, 11th Dist. Trumbull No. 2003-T-0042, 2004-Ohio-3678, ¶11, the

7

trial court's finding that Valerie suffered from a disability is not against the manifest weight of the evidence.

{¶23} In order to find the existence of a duty to provide support beyond a child's eighteenth birthday, it must also be established that the adult child "is incapable of supporting or maintaining himself or herself." *Id.* Kenneth argues Valerie's disabilities are not sufficient to prevent her from supporting herself. Dr. Farris, however, testified that Valerie has "a tremendous amount of difficulties to take care of herself in regards to activities of daily living." The magistrate found Valerie does not possess a driver's license, has panic attacks, and her mother is unable to work a full- time job because she has to take care of Valerie. We do note Valerie, at the time of the hearing, worked a part-time job and in the previous year had earned over $7,000 at her employment. At the same time, while the reasons are not clear on the record, she apparently was found to be ineligible for Social Security disability benefits. *See, e.g., Donohoo v. Donohoo*, 12th Dist. Clermont Nos. CA2011-11-080 & CA2011-11-081, 2012-Ohio-4105, ¶29 (involving an adult child receiving social security and supplemental security benefits). Even though Valerie does earn a modest income and may have been determined to be ineligible for Social Security disability, we cannot find the trial court's determination that Valerie was incapable of supporting herself was against the manifest weight of the evidence, as that finding was supported by some competent, credible evidence. *Id.* at ¶30-31 (because the child could not manage finances and his employment is not the only factor to determine his ability to be independent, the trial court properly found him to be a *Castle* child). *See also Blacker v. Blacker*, 2d Dist. Montgomery No. 20073,

2004-Ohio-2193 (adult child worked as a bagger at Kroger full time but was unable to be self-sufficient).

{¶24} While we do not find the trial court erred in finding Valerie a *Castle* child, this case reveals the need for direction, either from the Ohio Supreme Court or the General Assembly, with regard to the support requirements for adult children who have some level of disability, together with some ability to support themselves. R.C. 3109.01 states: "All persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes." Legal disability for purposes of R.C. 3109.01, however, is not defined. A definition of "legal disability" is found in R.C. 2131.02, with a list of specific statutes to which the definition applies. R.C. 3109.01 is not among them.

{¶25} There are several concerns associated with a support order in this scenario, when the *Castle* child is not subject to a guardianship. When a parent is obligated to support an adult child, there are limited, if any, protections with regard to the funds ordered to be paid by either parent for the benefit of the adult child.[1]

{¶26} If the adult child were subject to guardianship, several safeguards would be in place. First, a request for authority to expend funds would be required. Second, the guardian would be required to make a periodic accounting to the court. Third, the guardian would be required to act in the best interest of the ward or be subjected to removal.

---

1. Many questions are posed when a noncustodial parent is required to pay support to an adult child. For example, when a noncustodial parent is required to pay child support to the custodial parent of the adult child, what if there is a dispute between the adult child and the custodial parent with regard to the access of those funds? If the adult child were to enter into a contract, would that contract be enforceable against her? Further, while the domestic relations order indicates that she essentially "remains a minor," does that mean she has been adjudged incompetent? There is no order to that effect.

**{¶27}** Under these circumstances, it would seem that it would be in the best interest of the adult child to have a guardianship established in order to ensure the adult child receives the protections of the guardianship laws. However, if that was to be a requirement, it would need to be resolved by the legislature.

**{¶28}** Kenneth's first assignment of error is without merit.

**{¶29}** In Kenneth's second assignment of error, he challenges the method by which the trial court calculated his support obligation.

**{¶30}** In calculating the support order, the trial court added Valerie's income to Carol's income.

**{¶31}** In this circumstance, where the adult child is capable of providing at least some support for herself, it is not logical to have the support obligation of the parents determined, in part, by the amount of income generated by the recipient of the support. The support obligation of the parents should be determined only by the income of the parents. Thereafter, it would be appropriate to apply a *credit* to the combined parental child support obligation in the amount the adult child is reasonably expected to earn. This credit is appropriate because it is the adult child's income that is earned and should be applied by her for her own support. Although applying a credit in this case would increase Kenneth's percentage of income to total income, his annual support obligation would decrease as the total support order would have been offset by Valerie's income.

**{¶32}** Under his second assignment of error, Kenneth also requests this court to reconsider the holding in *In re Palcisco*, 11th Dist. Trumbull No. 2012-T-0031, 2012-Ohio-6134, and determine that child support may not be reinstated after it has been terminated due to a finding of age-based emancipation. To support his argument,

10

Kenneth cites to the Tenth Appellate District's opinion in *Geygan v. Geygan*, 10th Dist. Franklin No. 11AP-626, 2012-Ohio-1965, which this court already rejected in *Palcisco*. In *Palcisco*, this court considered the language in R.C. 3119.86(A)(1), which discusses the obligation to continue child support beyond the age of 18 and states that the "support order shall continue" beyond the child's eighteenth birthday if she is disabled and incapable of supporting herself. It rejected the appellant's interpretation that the statute indicated "that a child support order must be *in existence* on the child's eighteenth birthday in order to *continue* in existence." *Palcisco*, *supra*, ¶13 (emphasis sic). This court held that the "lack of a support order poses no impediment to the continuation of [the appellant's] duty to support, which is only conditioned upon the child's disability." *Id.* at ¶22.

{¶33} Here, although Kenneth's court-ordered obligation to pay child support had terminated when Valerie turned 18, this did not prevent a future order to pay support, as she was found to be a *Castle* child. Thus, the domestic relations court's jurisdiction to order child support continued, even in the absence of an existing support order.

{¶34} Kenneth's second assignment of error has merit to the extent indicated. Upon remand, the trial court is to calculate support utilizing Valerie's earning capacity in the form of a credit after a determination of support based on the income of both parents.

{¶35} On cross-appeal, Carol raises the following assignment of error:

11

**{¶36}** "The trial court erred and abused its discretion in failing to reinstate the support order as of May of 2011 since a *Castle* child is not subject to the age-based emancipation order."

**{¶37}** On cross-appeal, Carol argues the lower court erred in reinstating the child support obligation as of August 1, 2012, the date of the support hearing. Instead, she argues the lower court "should have simply vacated the trial court's October 20, 2011 decision that approved the administrative decision terminating support based on Valerie's emancipation." We disagree.

**{¶38}** Although Carol argues the October 20, 2011 decision should have been vacated, she filed a motion for the trial court to determine that Valerie was a *Castle* child and to determine that the administrative decision terminating support was in error. Carol never appealed from the original decision in the trial court that established when support should be terminated. Further, Carol failed to file a motion for relief from that judgment. Instead, she filed a motion for child support five months after child support for Valerie was *properly* terminated in accordance with the trial court's previous order.

**{¶39}** "A trial court may only relieve a party from judgment by the mechanisms provided by the Ohio Rules of Civil Procedure." *Allstate Ins. Co. v. Witta*, 9th Dist. Summit No. 25738, 2011-Ohio-6068, ¶19, citing *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380 (1981). In the absence of a Civ.R. 60(B) motion requesting the proper relief in this matter, the trial court did not have a basis to vacate the judgment and did not err in failing to do so. *See id.* at ¶19.

**{¶40}** Although Carol cites *Blacker v. Blacker*, 2d Dist. Montgomery No. 20073, 2004-Ohio-2193 and *In re Edgell*, 11th Dist. Lake No. 2009-L-065, 2010-Ohio-6435, for

12

the proposition that the date of the commencement of child support should be the same as the date it was cancelled, both of these cases involved the courts' consideration of a motion for relief from judgment. Thus, these courts considered the necessary factors for vacation of the judgment under Civ.R. 60(B), which did not occur here.

{¶41} Carol's assignment of error on cross-appeal is without merit.

{¶42} Based on the opinion of this court, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is hereby affirmed in part and reversed in part. This matter is remanded for proceedings consistent with the opinion of this court.

THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only in part, concurs in part, and dissents in part with a Concurring/Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only in part, concurs in part, and dissents in part with a Concurring/Dissenting Opinion.

{¶43} I agree with the conclusion, but not the analysis, of the majority on the first assignment of error, since Valerie was properly found to be a *Castle* child due to her disability. I disagree with the disposition of the second assignment of error, remanding to the lower court for a credit to be ordered toward child support based on Valerie's "earning capacity," given the special circumstances inherent in this case, as well as many other *Castle* cases. As to the cross-assignment of error, I concur with the majority in both its analysis and conclusion.

13

{¶44} Regarding the first assignment of error, the majority holds that Valerie is a *Castle* child, but proceeds to take issue with the *Castle* doctrine as it is presently applied, expressing the opinion that *Castle* children should be subject to guardianships, while noting that this would "need to be resolved by the legislature" to be a requirement. *Supra* at ¶ 27. Such analysis is purely advisory and is entirely unnecessary for the resolution of this appeal. This is an issue not presently before this court, since the appeal does not relate to the failure to appoint a guardian.

{¶45} "It is well settled that appellate courts do not indulge in advisory opinions." *Furbee v. Bittner*, 11th Dist. Lake Nos. 2014-L-077, et al., 2015-Ohio-4425, ¶ 36; *State v. Economos*, 11th Dist. Trumbull No. 2004-T-0124, 2005-Ohio-5605, ¶ 14 (while "considering appellant's assigned error may have some impact upon the general legal landscape, our opinion would be merely advisory" when the issue was moot). Since it is unnecessary and improper to advise the legislature in the manner done by the majority, I concur in judgment only with the court's analysis affirming the lower court on the *Castle* child issue.

{¶46} I dissent as to the determination that the lower court's decision should be reversed and this matter remanded to alter the child support award. Under the majority's analysis on this issue, the trial court should "calculate support utilizing Valerie's earning capacity in the form of a credit" toward child support. *Supra* at ¶ 34. The problem with this approach is that the "earning capacity" of some *Castle* children is difficult, if not impossible, to determine. The basis for finding an individual such as Valerie to be a *Castle* child is that she is incapable of supporting herself. Given some *Castle* children's variable states of employment and changing circumstances, this

number could frequently fluctuate. This is especially true in Valerie's case where, according to the court's statement of her mother's testimony, Valerie's "ability to function depends on her degree of anxiety and depression on any particular day." The fact that Valerie was able to hold a job for some period of time does not mean that this income can be relied upon or that it should greatly and directly reduce the father's support obligation.

{¶47} The majority essentially places an obligation on Valerie to work and treats her as an adult, exactly the opposite of what should be the case for a *Castle* child. *See Blacker v. Blacker*, 2nd Dist. Montgomery No. 20073, 2004-Ohio-2193, ¶ 31 (although the *Castle* child had begun working, the father's support obligation was ordered to continue as it had previously after the determination that the child was unable to support himself); *Kirkpatrick v. Kirkpatrick*, 9th Dist. Summit No. 14193, 1989 Ohio App. LEXIS 4545, 4 (Dec. 6, 1989) (where a minor child worked a limited number of hours per week and the money earned was used for her personal needs, the court did not err in not factoring in her income, since it was too insubstantial to warrant a reduction in the support obligation).

{¶48} This scenario could incentivize Valerie to discontinue her employment, which would merely decrease her support, although such work could help Valerie develop skills for the future. It also seems apparent that the mother must sacrifice time to help ensure Valerie is able to attend work, given that Valerie cannot drive or ready herself for the day. This creates additional costs associated with Valerie's employment, including her mother's inability to work full-time.

**{¶49}** The lower court had to fashion an appropriate remedy under the specific circumstances of this case. No applicable law is set forth to support a contrary holding. This is especially evident when reviewing *Charlton v. Charlton*, 11th Dist. Geauga No. 95-G-1921, 1995 Ohio App. LEXIS 5564 (Dec. 15, 1995), cited by the appellant in support of his position, which included a finding that a child was capable of self-support, contrary to the conclusion in the present matter that Valerie is not so capable.

**{¶50}** As such, I do not believe it is necessary or prudent to decrease Valerie's support based upon reliance on her earning capacity. This blurs the line between being a *Castle* child and a typical adult who does not require support and creates a rule in which constant modification of support could be required to uphold fairness and equity.

**{¶51}** For the foregoing reasons, I concur in judgment only and disagree with the unnecessary and improper analysis of the first assignment of error relating to *Castle* children. I dissent from the disposition and analysis on the second assignment of error since a determination of Valerie's earning capacity for the purposes of child support is unwarranted. Regarding the disposition of the cross-assignment of error, I concur in both the judgment and analysis.