[Cite as *Kuyper v. Kuyper*, 2026-Ohio-1885.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEVEN J. KUYPER, | : | APPEAL NO. C-250309 |
| | | TRIAL NO. DR-2201391 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| CARRIE E. KUYPER, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/22/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *Kuyper v. Kuyper*, 2026-Ohio-1885.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEVEN J. KUYPER, | : | APPEAL NO. C-250309 |
| | | TRIAL NO. DR-2201391 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| CARRIE E. KUYPER, | : | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 22, 2026

*Blake P. Somers LLC* and *Blake P. Somers*, for Plaintiff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

**{¶1}** This case concerns the question of whether the trial court should have granted mother a retroactive modification of child support regarding K.K. during a period in which mother and father were ordered to have equal parenting time with K.K. but K.K. never actually spent any time with father, a circumstance that caused mother to be held in contempt of court several times. Mother appeals from the trial court's denial of her motion to modify and argues in a single assignment of error that the trial court abused its discretion by not modifying her support obligation when she resultingly "paid support twice." For the following reasons, we overrule the assignment of error and affirm the judgment of the trial court.

## I. Background

**{¶2}** This action was first initiated in August 2022 when the parties filed competing claims for divorce. The parties have two children, K.K. and B.K. In October 2022, the trial court ordered under Civ.R. 75(N) that mother and father would have equal parenting time with the children and neither party would be required to pay child support.[1]

**{¶3}** The following month, father filed a motion for contempt and attorney fees, alleging that mother routinely failed to follow the court's parenting-time orders.

**{¶4}** The month after that, father filed a second motion for contempt and attorney fees, in essence alleging that mother was "sabotaging" the reunification process between father and K.K. and continually not following the court's parenting-time orders, particularly with K.K.

**{¶5}** On September 23, 2024, the trial court entered its decision on custody,

---

[1] The trial court entered amended orders under Civ.R. 75(N) on November 3, 2022, with no changes to the parenting-time or child-support orders.

support, and contempt based on evidence presented during a six-day trial. The court's 36-page order reflects the turmoil and contentious history between the parties that was detrimental to the children. Among many other things, the court's order states,

This court begins by noting that it is mandated to protect the minor children in this action and make decisions in their best interests. This court is solely determined in this task.

While this Court certainly condemns Father's behavior in the years leading up to 2020, Father has consistently shown that he is clean from drugs and has learned from his mistakes. It appears that Mother has been unable to let the past go. The only people that are hurt by Mother's inability to do so are the children. Parents' shortcomings and faults can be used as learning tools for children IF properly explained to them when age-appropriate. This has not happened in this family. Mother has weaponized Father's past addictions against him and has used that weapon to practically destroy his relationship with K.K.

Boundaries, accountability, and discipline are all critical skills a parent must possess. Testimony and evidence showed that Mother has failed to exemplify such skills. Mother has complete and utter lack of boundaries with K.K. –a lack of boundaries so monumental that it may be the most severe type this Court has ever seen. Dr. Shupe's testimony that Mother's and K.K.'s stories are almost verbatim, almost as if they share the same memory, is extremely troubling to this court. Mr. Reeb, Ms. Szegi, Dr. Shupe, and the GAL all spoke to the alienation, parentification, and alignment that is prevalent in this case. Mother's beliefs and views of Father bleeding onto the children has caused a

4

deep-rooted resist/refusal type dynamic of epic proportions between Father and K.K. A father and daughter that used to share a close bond have now become estranged to the point that K.K. refers to her father as "Steve." This Court is extremely saddened by the current state of Father and K.K.'s relationship. While this Court wishes it could turn back the clock, that is not possible. Now, with K.K.'s 18th Birthday just about six months away, this Court is incredibly concerned that K.K. will shut out Father completely once she has the opportunity to do so. This Court will do everything in its power to attempt to mitigate this risk as well as protect the same thing from happening to B.K. The alienation of B.K. has already begun to show by Mother consistently undermining Father's parenting of B.K. and questioning Father's parenting capability. This Court hopes this decision will help B.K. foster a strong relationship with both parents.

This Court, as did the GAL, tortuously considered all ORC factors for shared parenting because it is best when BOTH parents can offer love, affection, input, guidance, and advice in making decisions for their children. However, these two adult parents cannot, in any meaningful way, communicate and cooperate to make parental decision[s] for their children.

(Emphasis in original.)

{¶6} Ultimately, the court designated father the sole legal and residential custodian for both children. Regarding parenting time with K.K., the court ordered that the parties share "equal, 50/50" parenting time. The court said that K.K. could determine the schedule, given her age, but, if K.K. refused or was unable, the court

provided a schedule that the parties were required to follow. The court emphasized "that K.K. **MUST** spend half of the week at Father's home." (Emphasis in original.) The court said, "If K.K. refuses to go to Father's home for parenting time, Mother will be held responsible and may be found in contempt."

{¶7} As to mother's prior actions, the court found mother in contempt for failing to comply with the court's previous orders "by not turning over K.K. for equal parenting time with Father pursuant to [the] court's order." However, the court utilized its discretion to deny father's second motion for contempt despite being "thoroughly convinced that Mother successfully thwarted all meaningful attempts for K.K. to successfully participate in reunification counseling with Father."

{¶8} As to child support, mother was ordered, effective October 1, 2024, to pay total monthly child support for both children in the amount of $1,076.18 ($506.03 per child in child support and $21.52 per child in current cash medical support, plus a two percent processing fee).[2] Regarding deviations, the court said,

> The Child Support Obligor's obligation for child support and cash medical support does not deviate from the actual annual obligation on the child support worksheet attached hereto in excess of the 10% reduction despite obligor having over 147 overnights with one of the children because Obligor *only* has over 147 overnights with *one* of the children, and thus, this Court finds it fair and equitable to not grant any further deviation beyond the 10% for 90 overnights.

(Emphasis in original.)

{¶9} On October 9, 2024, father filed a third motion for contempt alleging

---

[2] The trial court entered a nunc pro tunc entry on September 25, 2024, with no relevant changes.

that he had not received any parenting time with K.K. since the court issued its custody and parenting-time decision.

{¶10} Mother filed a response in opposition, claiming she had attempted to force K.K. to participate in father's parenting time. Attached to the motion was an affidavit of K.K. which avers facts that tend to support Mother's assertions that K.K. was the one refusing to go, despite mother's efforts.

{¶11} On March 26, 2025, after two hearings, the trial court entered a decision on the divorce as well as on all pending motions, including the above-mentioned motion for contempt. Relevant here, the court held mother in contempt for failing to transfer custody of K.K. to father when the custody decision was issued. The court found that, during the period in question, mother "did not exercise her parental authority to impose any disciplinary consequences on K.K." Rather, mother "allowed K.K. to go to a Cincinnati Bengals game, a Xavier University Basketball game, K.K.'s boyfriend's house, homecoming, and on a trip to Gatlinburg." The court also found that mother allowed K.K. to "continue working her job at LaRosa's and to drive [mother]'s car as needed."

{¶12} On April 24, 2025, mother filed a motion to modify child support, retroactive to October 1, 2024, (the date that her child-support obligation became effective). The motion claimed, "There has been a substantial change in circumstances not contemplated at the time of issuance of the original, September 25, 2024, child support order, now making that order unreasonable." The motion stated,

> K.K. emancipated April 7, 2025. By the time K.K. graduates near the end of May, [mother] will have paid [father] well over $3,542.00 for support of K.K. even though she has also paid 100% of in-kind support of K.K. But, as this Court is aware there has been a substantial change

7

of circumstances not contemplated at the time of the Court's September 25th Decision.

At the time of the order, pursuant to that order, the Court expected K.K. to spend 50%, half, of her time with [father] and calculated [mother]'s support obligation accordingly. As this Court knows, however, despite the Court's 50/50 parenting time order, K.K. has not spent a night at [father]'s home since the Court's September 25th Decision. While the Court has found [mother] in contempt for K.K. not being with [father], it does not change the fact [father] is not entitled to receive child support for K.K. when [mother] paid 100 % of the in-kind support for K.K.

{¶13} The motion argued that K.K. not spending any time with father was a substantial change in circumstances sufficient to support a modification and a special circumstance that would allow retroactive modification of the child-support obligation. The motion further argued that modification was required because, to do otherwise, would allow father a windfall. The motion requested a modification of child support, effective October 1, 2024, to $0 per month.

{¶14} Father responded in opposition to mother's motion, arguing that a modification is not appropriate where he "was not permitted to exercise [his] parenting time with [K.K.] due to the contemptuous interference with that parenting time by [mother]." Father claimed that mother was requesting that her child-support obligation be reduced retroactively based on her own contemptuous behavior. He argued, "Following Mother's logic on this request would create a precarious precedent wherein parents would be encouraged to disobey the Court's parenting time orders for their own financial benefit." The motion further stated, "While K.K. was emancipated

on April 7, 2025, the parties have one more minor child, B.K., who does not emancipate for many years. Father hopes that Mother's repeated behavior, as presented to the Court throughout the pendency of this matter and now in bringing forth this Motion, will not be encouraged."

{¶15} On May 5, 2025, the trial court entered a decision denying mother's modification request. The court said,

> From September 25, 2024 until K.K.'s emancipation on April 7, 2025, [mother] continued to withhold K.K., refusing to comply with this Court's final parenting orders despite [father]'s repeated attempts to secure her compliance therewith. In hearing [father]'s contempt motions on March 7, 2025, the Court found [mother]'s excuses for ignoring the Court's order to be wholly without merit.

{¶16} The court found that mother paid child support through a wage-withholding order and now wished for the support to be returned to her. The court first agreed with father that granting such a request would "'create a precarious situation wherein parents would be encouraged to disobey the Court's parenting time orders for their own financial benefit.'" The court also found that mother's request was barred by the doctrine of unclean hands where she violated good faith by her prior conduct and the "injury incurred" was "chargeable to her own wrong." The court said, "[Mother]'s flagrant disregard for the Court's orders and for K.K.'s best interest bar her from relief. Further, [Mother]'s request may violate R.C. §2323.51(A)(2)(a)."

{¶17} The decree of divorce was entered on May 23, 2025, and an entry terminating child support for K.K. was entered on May 30, 2025, effective May 21,

9

2025.[3]  Mother now appeals from the trial court's decision denying her motion to modify her child-support obligation for K.K.

## II. Analysis

**{¶18}**  "This court 'will not disturb a trial court's decision regarding child support absent an abuse of discretion.'"  *Kitzberger v. Kitzberger*, 2025-Ohio-1721, ¶ 8 (1st Dist.), quoting *Bohannon v. Lewis*, 2022-Ohio-2398, ¶ 39 (1st Dist.).  "'An abuse of discretion occurs when a court exercises its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.'"  *Id.*, citing *Mallory v. Mallory*, 2024-Ohio-5458, ¶ 13 (1st Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39.  "However, '[t]rial "courts lack discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule."'"  *Id.*, citing *Gadson v. Scott*, 2025-Ohio-7, ¶ 16 (8th Dist.), citing *Johnson* at ¶ 39.

**{¶19}**  In a single assignment of error, mother argues that the trial court abused its discretion when denying her motion to modify child support where she paid support twice.  More specifically, she argues that the trial court erred in not modifying her child-support obligation retroactively to the date on which it became effective "given that it is undisputed K.K. resided with [mother] 100 [percent] of the time during the effective date of the Order and [father] contributed nothing to K.K.'s support during the same period."

**{¶20}**  In support of this assertion, she points to *Cauthren v. Cauthren*, 2017-

---

[3] Father suggests that this termination rendered this court without jurisdiction to address the appeal.  However, in support of this argument, he cites only to authority that pertains to a court's authority to continue a duty of support *beyond* a child's eighteenth birthday, which is not applicable to the instant case.  *See* R.C. 3119.86; *M.A.H. v. S.F.*, 2003-Ohio-4049, ¶ 12 (8th Dist.); *Fenstermaker v. Fenstermaker*, 2015-Ohio-5524, ¶ 17 (11th Dist.); *Castle v. Castle*, 15 Ohio St.3d 279 (1984).  Rather, here, the motion to modify at issue in this appeal was filed before the child's emancipation and concerns a support obligation that was applicable to a period *before* the child was emancipated.  *See generally Sandel v. Choma*, 2017-Ohio-8301, ¶ 13-14 (9th Dist.).

Ohio-5846 (3d Dist.), *Johnson v. Johnson*, 2003-Ohio-6710 (3d Dist.), and *Peterson v. Hunt*, 1998 Ohio App. LEXIS 5092 (3d Dist. Oct. 15, 1998).

**{¶21}** In all these cases, "credits" were applied towards a parent-obligor's child-support arrearage based on in-kind contributions made towards the at-issue children by the noncustodial parents during an extended period in which the children were living with the noncustodial parents. However, notably, there is no indication in these cases that the extended periods with the noncustodial parents were caused by any misconduct of the noncustodial parent.

**{¶22}** "R.C. 3105.011 states that a judge in a domestic relations action has 'full equitable powers . . . appropriate to the determination of all domestic relations matters.'" *Offenberg v. Offenberg*, 2003-Ohio-269, ¶ 66 (8th Dist.). "An equitable defense can be raised against a statutory remedy and, therefore, the equitable doctrine of unclean hands can be employed, where appropriate, in a divorce action." *Id.*, citing *Safranek v. Safranek*, 2002-Ohio-5066 (8th Dist.). "Equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his or her prior-related conduct, he will be denied the remedy." *Id.*, citing *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45 (9th Dist. 1991).

**{¶23}** Here, mother does not challenge any of the trial court's determinations as to her conduct. Rather, she asserts that such conduct does not change the fact that she "paid support for K.K. twice, once in the form of daily, in-kind support, and a second time pursuant to the Trial Court's Support Order." She argues that father "is not entitled to receive child support for K.K. when [she] paid 100 [percent] of the in-kind support for K.K."

**{¶24}** While it may be true that mother ultimately provided some in-kind

11

support for K.K. that was beyond that originally anticipated by the trial court, any such support payments were voluntarily made by mother where there is no indication that father was not ready and able to care for K.K. during the periods in which K.K. was ordered to be in his care but was not. Accordingly, we cannot determine that the trial court abused its discretion by failing to give mother "credit" for such voluntary contributions where it was mother's own conduct that created the inevitability of such payments. Therefore, we overrule the assignment of error.

### *III. Conclusion*

{¶25} For the foregoing reasons, we overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **BOCK, JJ.,** concur.